FILED
SEPTEMBER 1, 2009
KAREN S. MITCHELL
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

AMARILLO DIVISION

| | | |
|---|---|---|
| ANGELA McCAA and JERRY McCAA, | § | |
| | § | |
| PLAINTIFFS, | § | |
| v. | § | CIVIL ACTION CAUSE NUMBER |
| | § | |
| ALBERT R. "BUDDY" EASTERLING, et al., | § | 2:09-CV-004-J |
| | § | |
| DEFENDANTS. | § | |

## MEMORANDUM OPINION and ORDER

Before the Court are Defendants Montgomery County, Texas, former Montgomery County Sheriff Guy Williams, and current Montgomery County Sheriff Tommy Gage's Rule 12(b) motions to dismiss for failure to state a claim upon which relief can be granted, and the responses and replies to those motions. The Montgomery County Defendants' motions to dismiss are granted for the following reasons.

### *Background*

Plaintiffs sue the Montgomery County Defendants for alleged civil rights violations and for conspiracy to violate their civil rights, pursuant to 42 U.S.C. § 1983 and § 1985. They also allege a number of state law claims against other Defendants, including assault, libel and slander, business disparagement, and intentional infliction of emotional distress, and civil conspiracy. Finally, they allege they are entitled to overtime pay pursuant to 29 U.S.C. § 216. This order addresses only their federal claims.

Montgomery County is located in the Houston Division of the United States District Court for the Southern District of Texas. Plaintiffs' claims against Montgomery County are based upon the fact that one of the individually named defendants, Jason Whittington, an employee of

Defendants Buddy and Karen Easterling and Easterling Acquisitions, L.L.C., was also a reserve deputy of the Montgomery County Sheriff's Office at the time of the four incidents in question. The Montgomery County Defendants state in their answer that Whittington is no longer a reserve deputy sheriff of Montgomery County, Texas. Plaintiffs do not contest that assertion.

Plaintiffs allege that Whittington mentioned his status as a reserve deputy to City of Perryton police officers and to other Easterling employees. They allege that Albert Easterling appointed Whittington the "de facto lawman of the worksite." Plaintiffs do not allege that Whittington: (1) ever identified himself as a Montgomery County reserve deputy to the Plaintiffs; (2) ever attempted to arrest them; or (3) ever performed any law enforcement duties in his interactions with them. It is not disputed that Whittington was well outside the jurisdiction of Montgomery County when all of the alleged incidents took place. The alleged incidents involving Whittington all took place in Perryton, Texas, which is in Ochiltree County, Texas (just about as far north in Texas as you can get), and in the City of Giddings in Lee County, Texas (which is about 90 miles west of Montgomery County).

Plaintiffs allege that on January 11, 2008, during a confrontation with the Plaintiffs, Jason Whittington told Defendant Albert "Buddy" Easterling that Whittington had a gun with extra magazines, and then asked Easterling "[w]hat do you want me to do with it?" Easterling allegedly replied, "[y]ou know what to do with it." Whittington is not alleged to have done anything further on that date but make that threatening statement.

The next day, on January 12, 2008, Plaintiffs allege that Whittington pounded on the Plaintiffs' door complaining about his cable television having been turned off by them, and then reached inside Plaintiffs' residence and tried to grab Mrs. McCaa. Plaintiffs do not allege that

Whittington attempted to arrest them or that he identified himself to Mrs. McCaa as a reserve deputy during this incident. In response to instructions from City of Perryton police officers, who responded to Mrs. McCaa's call to the local police for assistance, Whittington allegedly identified himself as a Montgomery County reserve deputy in response to a Perryton police officer's commands to show them his hands. Plaintiffs allege that Perryton police officers ordered the McCaas to leave town and that the Perryton officers acted on the behest of Defendants Whittington and Andrea Hooper, another Easterling employee.

Plaintiffs allege that on April 4, 2008, Whittington, along with Defendant Christopher Brzozowski, made "outrageous allegations" (including that the Plaintiffs had criminal records) to Sergeant Daniel Harney of the City of Giddings, Texas, police department. Plaintiffs allege that Sgt. Harney told them that Whittington had told Harney that Whittington was a reserve deputy with the Montgomery County Sheriff's Department. Plaintiffs allege that this false report caused Giddings police to threaten the Plaintiffs and place them in fear of arrest.

Plaintiffs allege that they were deprived of their constitutional rights to travel, to privacy, and to due process and equal protection of the laws as a result of Whittington's actions. They seek to hold the Montgomery County Defendants liable based upon Whittington's then status as a reserve deputy sheriff.

Defendants City of Perryton, Texas, and its police officers were dismissed pursuant to an agreed stipulation for dismissal and an agreed order of dismissal entered on March 6, 2009.

Plaintiffs allege that the Easterling's company owes damages to the Plaintiffs for unpaid overtime. They do not allege that Montgomery County was their employer or that it owes them any unpaid wages.

## *Legal Standards*

The federal rules require that a pleading need only furnish a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. Pro. 8(a). Rule 12(b)(1) & (6) motions therefore function to test the formal sufficiency of a complaint against the liberal pleading requirements of Rule 8. C. Wright & A. Miller, 5 <u>Federal Practice and Procedure</u> § 1356 at 590 (1969).

As the Supreme Court has stated,

> [w]hen a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. ...
> "In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) (footnote omitted).

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). *See also Gardner v. Toilet Goods Assn.*, 387 U.S. 167, 172, 87 S.Ct. 1526, 1529, 18 L.Ed.2d 704 (1967); *Bruce v. First Federal Sav. & Loan Ass'n of Conroe, Inc.*, 837 F.2d 712, 713 (5th Cir. 1988).

Section 1983 "should be read against the background of tort liability." *Monroe v. Pape,* 365 U.S. 167, 187, 81 S.Ct. 473, 484, 5 L.Ed.2d 492 (1961), *overruled in part on other grounds, Monell v. Dep't of Social Services,* 436 U.S. 658, 690-691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Though a person is ordinarily liable "for the natural consequences of his actions," *id.*, neither traditional tort law nor § 1983 imposes liability where causation, though present in fact, is too remote. *Martinez v. California*, 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). Section 1983 does not contain a bright-line "limitations" period on ex-supervisor liability for constitutional violations by erstwhile subordinates, but a lapse of time is certainly a consideration.

*See, e.g., Martinez*, *supra,* 444 U.S. at 285, 100 S.Ct. at 559 (five month delay ends fair characterization as state action because act was "too remote a consequence of the ... officers' action to hold them responsible under the federal civil rights law"); *Humann v. Wilson*, 696 F.2d 783 (10th Cir.1983)(two-month lapse destroyed proximate cause); *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983)(three weeks too long).

When a plaintiff seeks to impose § 1983 liability on a governmental entity for its failure to train its employees, normal tort standards are replaced with heightened standards of culpability and causation. *City of Canton v. Harris*, 489 U.S. 378, 391, 396, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)(O'Connor, J., concurring in part and dissenting in part)(finding that single incident liability for a failure to train only obtains where "[t]he constitutional duty of the individual officer is clear, and it is equally clear that failure to inform city personnel of that duty will create an extremely high risk that constitutional violations will ensue").  Liability will only attach if the entity was deliberately indifferent to the constitutional rights of citizens – a showing of negligence or even gross negligence will not suffice. *Id.* at 388 & n.7, 109 S.Ct. 1197; *see also Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. at 400, 117 S.Ct. 1382 ("[I]n enacting § 1983, Congress did not intend to impose liability on a municipality unless deliberate action attributable to the municipality itself is the 'moving force' behind the plaintiff's deprivation of federal rights.").

Errors of judgment do not alone prove deliberate indifference, nor is such heightened culpability established simply by showing that a governmental officers could have ordered more or different training or even misjudged whether specific training was or was not necessary. *See Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). Similarly, to satisfy causation, the plaintiff must demonstrate that the failure to train was the moving force behind the constitutional violation -- "but for" causation is not enough. *Board of County Comm'rs of Bryan County v. Brown*,

520 U.S. 397, 404, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997); *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir.2003) (finding no deliberate indifference as a matter of law with respect to sheriff's office training obligations).

To safeguard the boundaries established in Monell, the Supreme Court has made clear that in addition to a heightened standard of culpability, plaintiffs must meet a heightened standard of causation in order to hold a governmental entity liable under § 1983. *City of Canton*, 489 U.S. at 391-92, 109 S.Ct. 1197. A § 1983 plaintiff must prove that the entity's custom or policy – in this case the failure to train and/or supervise and a failure to discharge from the reserve deputy sheriff program – was the "moving force" that caused the specific constitutional violation; stated differently, the plaintiff must establish a "direct causal link" between the policy and the constitutional injury. *Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382.

The "connection must be more than a mere 'but for' coupling between cause and effect." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992). The deficiency in training must be the actual cause of the constitutional violation. Accordingly, the employing entity must not be held liable simply because the allegedly culpable volunteer worked for the county. "[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *City of Canton*, 489 U.S. at 385, 109 S.Ct. 1197; *Bryan County*, 520 U.S. at 415, 117 S.Ct. 1382.

The identified deficiency in a employer's training program "must be closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391, 109 S.Ct. 1197. The plaintiff must prove an affirmative to the question: "Would the injury have been avoided had the employee been trained under a program that was not deficient in the identified respects?" *Id.* But a supervisor cannot reasonably be expected to guard against the deliberate criminal acts of his properly-trained

6

employees when he has no basis upon which to anticipate the misconduct.  *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).  Much less misconduct which occurred miles from its home jurisdiction.

Finally, it is proper to dismiss allegations against governmental officers in their official capacities when the allegations duplicate claims against the governmental entity itself.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001)(noting that the official-capacity claims were duplicative of the claims against the governmental entities); cf. Fed. R. Civ. Pro. 25(d)(providing that when a public officer is sued in his official capacity and then ceases to hold office, his successor is automatically substituted as a party).

*Discussion and Analysis*

The Montgomery County Defendants argue that they are entitled to dismissal from this action based on the fact that the Plaintiffs have failed to allege facts which support their allegation that Defendant Whittington was acting under "color of law" during any of his interactions with them or about them.  They state that Whittington was not acting with county authority – and therefore not acting under "color of law" – when any of the alleged incidents took place.  Plaintiffs respond that Whittington was acting pursuant to a "duty imposed by state law when he summoned assistance from the Giddings PD, purportedly to prevent stalking, harassment, and threats," the duty being to "prevent and suppress crime," pursuant to Tex. Code Crim. P. art. 2.13(b)(1) and that Whittington had statewide arrest powers pursuant to Tex . Code Crim. P. art. 14.03(d).  Defendants respond that even if Whittington contacted the Giddings Police Department to report a crime he was then acting as a private citizen: he personally did not attempt to arrest the Plaintiffs pursuant to Tex. Code Crim. P. art. 14.03(d) and he was without law enforcement powers or authority in Giddings (such as those within Tex. Code Crim. P. art. 2.13) because he was outside of his jurisdiction and no crimes being

reported were allegedly committed within his presence. Plaintiffs do not sufficiently explain how actions occurring in Lee and Ochiltree Counties were *caused by* the policies of Montgomery County.

Defendants further state that the Plaintiffs have sued Montgomery County under 42 U.S.C. § 1985 for violation of equal protection of the laws. However, a Section 1985 conspiracy claim involving equal protection would fall under Section 1985(3), entitled "Depriving persons of rights or privileges," which requires an allegation that the defendants' actions were motivated by racial or some other type of "invidious, class-based discrimination." *Bray v. Alexandria Women's Health Care*, 506 U.S. 263, 268, 113 S.Ct. 753, 758 (1993).

There is no allegation that any of the Montgomery County Defendants' action were motivated by racial or some other type of invidious, class-based discrimination. Defendants' motions are therefore granted as to Plaintiffs' Section 1985 claims against them.

Plaintiffs' unpaid wages claim appears to be alleged only against the Easterlings and the Easterling's company. They do not allege that Montgomery County was their employer or that it owes them any unpaid wages. So that the record is clear, any unpaid wages claim against the Montgomery County Defendants is dismissed because there is no allegation of the requisite employment relationship. *See* 29 U.S.C. § 216(b)(("Any *employer* who violates the provisions of section 206 or section 207 of this title shall be liable to the employee . . ..").

Pursuant to Rule 25(d) of the Fed. R. Civ. Pro. 25(d), which provides that when a public officer is sued in his official capacity and then ceases to hold office, his successor is automatically substituted as a party, current Montgomery County Sheriff Tommy Gage was automatically substituted as a party-defendant in place of former Sheriff Guy Williams as the proper defendant against whom Plaintiffs' official capacity claims are brought. Further, as to those claims, the claims against Sheriff Gage are dismissed because those allegations duplicate the claims asserted against

the governmental entity itself, Montgomery County. There are no individual capacity claims alleged against the current Montgomery County Sheriff.

Sheriff Tommy Gage took office from former Sheriff Guy Williams on January 1, 2005. Plaintiffs allege that the incidents in question occurred on January 11 and 12, 2008, and on April 4, 2008. Plaintiffs allege that when Guy Williams was the sheriff, sometime around August of 2003, Whittington assaulted a prisoner and that the Montgomery County Sheriff's office, and/or then-Sheriff Williams, covered the felony assault up so that Whittington could be a deputy sheriff. Plaintiffs' claims against Williams are dismissed because § 1983 does not imposes liability where causation, even though potentially present in fact, is too remote. Under the specific facts alleged in this case and as a matter of law, causation is absent under the time line as alleged by Plaintiffs. Causation can not imposed liability upon an ex-supervisor for constitutional violations by erstwhile subordinates which occurred more than three years after the supervisory relationship ended. *See, e.g., Martinez*, 444 U.S. at 285, 100 S.Ct. at 559 (actions "five months later cannot be fairly characterized as state action"); *Humann v. Wilson*, 696 F.2d 783 (10th Cir.1983)(two-month lapse destroyed requisite proximate cause); *Fox v. Custis*, 712 F.2d 84, 87 (4th Cir. 1983)(three week lapse is too long).

Plaintiffs have not alleged facts showing how any training policy, or a lack thereof, or an employment decision of the Montgomery County Sheriff Office itself, or a non-prosecution decision by a state prosecutor, can make Montgomery County liable to them for having caused the constitutional violations they allege. Plaintiffs do not explain how the County's alleged failure, even assuming it did, to inform Jason Whittington of his constitutional duty not to harass or threaten them created an extremely high risk that the alleged constitutional violations ensued. Plaintiffs do not allege that Montgomery County had a duty to supervise Whittington's actions in other counties, or

that any County official even knew of the alleged acts of Jason Whittington. Liability will only attach if the governmental entity or its officials were deliberately indifferent to the constitutional rights of citizens such as the McCaas. Plaintiffs have not explained why or how any deliberate action attributable to the County itself is or can be the moving force behind the Plaintiffs' alleged deprivation of federal rights. To satisfy causation, Plaintiffs must demonstrate that the failure to train or supervise or terminate was the moving force behind the constitutional violations alleged. This they have not done. In short, they have not established a direct causal link between the policy and the constitutional injuries alleged.

### *Conclusions*

Plaintiffs' claims against Montgomery County, Texas, former Montgomery County Sheriff Guy Williams, and current Montgomery County Sheriff Tommy Gage are dismissed for failure to state a claim upon which relief can be granted. Leave is denied to file a second amended complaint adding Montgomery County Sheriff Tommy Gage as a party defendant because those claims are moot. Montgomery County not being the employer of either McCaa, all unpaid wages claims, if any, asserted against any County official or the County itself are dismissed. The County Defendants being dismissed, all state-law based claims against them are also dismissed without prejudice.

It is SO ORDERED.

Signed this the 1st day of September, 2009.

/s/ Mary Lou Robinson
**MARY LOU ROBINSON**
UNITED STATES DISTRICT JUDGE